IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PETER MARIO GOICO,

  Plaintiff,

v.               Case No. 20-1025-JWB

UNITED STATES GOVERNMENT; DONALD TRUMP,
President of the United States; WILLIAM BARR,
Attorney General of the United States; and STEPHEN HAHN,
the Commissioner of Food and Drug Association,

  Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff's motion for preliminary injunction (Doc. 4) and Defendants' motion to dismiss (Doc. 31). The motions have been fully briefed and are ripe for decision. (Docs. 32, 33, 35, 36.) For the reasons set forth herein, Defendants' motion to dismiss is GRANTED and Plaintiff's motion for preliminary injunction is DENIED.

### I. Background and Procedural History

On January 30, 2020, Plaintiff Peter Goico, proceeding pro se, filed a complaint against President Donald Trump, William Barr, the Attorney General of the United States, and the United States Government. (Doc. 1.) Essentially, Plaintiff alleges that President Trump, by executive order on January 31, 2019, "unilaterally banned all flavored vapes (without congressional approval) and further declared that every vaping product has already been illegal and will remain so until the FDA says otherwise." (Doc. 1 at 2.) Plaintiff further alleges that he has been denied access to vaping because the industry is collapsing and seeks injunctive relief in the form of an order prohibiting the enforcement of Trump's decree. Plaintiff alleges that the government has unfairly targeted vape customers and treats them differently than marijuana consumers. Plaintiff

alleges that he can be arrested under Trump's executive order for admitting that he has vaped. (*Id.* at 3.) Plaintiff brings claims pursuant to 42 U.S.C. § 1985 and the Fifth, Eighth, and Fourteenth Amendments.

On the same date that he filed his complaint, Plaintiff moved for injunctive relief. (Doc. 4.) Plaintiff's motion argues that the federal government has allowed exceptions to the federal drug policy by not enforcing marijuana laws and that those same exceptions should be allowed for vaping. On April 28, Plaintiff filed an amended complaint to add Stephen Hahn, the Commissioner of Food and Drug Association, as a defendant. (Doc. 18.) Besides the addition of a new defendant, there are no substantive changes to the amended complaint.

After filing his amended complaint, Plaintiff filed returns showing service. Those documents show that the Department of Justice was served at 950 Pennsylvania Avenue in Washington, D.C. on May 13, 2020, and that President Trump's summons was delivered to the White House on May 9, 2020. (Doc. 21.) Defendant Stephan Hahn was served on June 18, 2020. (Doc. 23.) The returns show that the summonses were sent by "Goico" at the same address listed on this court's docket sheet for Plaintiff. (Docs. 21, 23.) After serving those Defendants, Plaintiff moved for default judgment. As noted in this court's order denying Plaintiff's motion, Plaintiff had failed to serve the United States as required by Fed. R. Civ. P. 4(i). (Doc. 26.) A summons was then issued by the clerk to Plaintiff so that he could serve the United States. Plaintiff then filed a notice that he had served the United States. (Doc. 27.) Plaintiff has informed the court that he personally sent the summonses to Defendants by mail. (Doc. 35 at 1.)

Defendants move for dismissal on the basis that Plaintiff failed to properly serve Defendants, Plaintiff lacks standing to assert his claim, and Plaintiff has failed to state a claim.

2

**II.     Standards**

    **A. Fed. R. Civ. P. 12(b)(5)**

Motions to dismiss for insufficient service of process are governed by Federal Rule of Civil Procedure 12(b)(5). If service of process is insufficient under Federal Rule of Civil Procedure 4, a federal court is without personal jurisdiction over that defendant. *Rivera v. Riley Cnty. Law Bd.*, No. 11-cv-02067-JAR-JPO, 2011 WL 4686554, at *2 (D. Kan. Oct. 4, 2011) (citing *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1273 (D. Kan. 2011)). "Once a defendant challenges service of process in a motion to dismiss under 12(b)(5), the burden falls on the plaintiff to show [he] has satisfied the statutory and due process requirements with service of process." *Id.*

    **B. Fed. R. Civ. P. 12(b)(1) and 12(b)(6)**

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the court is faced with a motion invoking both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal quotation and

3

citation omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the court must accept all such allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If there is a challenge to the actual facts, the court "may not presume the truthfulness of the complaint's factual allegations. *Id.* at 1003. The court has discretion to allow affidavits and other documents to resolve disputed facts. *Id.*; *see also Cochran v. City of Wichita*, No. 18-1007-JWB, 2018 WL 3772681, at *2 (D. Kan. Aug. 9, 2018).

If the court has subject matter jurisdiction under the foregoing standards, it will then address arguments raised under Rule 12(b)(6). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### III. Analysis

#### A. Insufficient Service

Defendants initially argue that Plaintiff has failed to properly serve them because Plaintiff personally mailed the summons to each individual Defendant and the United States Attorney's Office for the District of Kansas. Rule 4(c)(2) of the Federal Rules of Civil Procedure states that service of a summons may be carried out by "any person who is at least 18 years old and not a party." In this district, service is defective when a plaintiff mails the summons himself. *Constien v. U.S.*, 628 F.3d 1207, 1213-15 (10th Cir. 2010).

4

Here, Plaintiff admits that he placed the summons in the mail himself based on instructions from the clerk's office and because he could not afford to pay someone to do it. Plaintiff argues that Defendants should waive the service requirement because Plaintiff will just refile if the case is dismissed for lack of proper service. "The government cannot waive service of process." *Id*. at 1213. Because Plaintiff personally mailed the summons, the court finds that the summonses are defective pursuant to Rule 4(c)(2). *Id*.; *see also Shophar v. United States*, No. 19-04052-HLT-KGG, 2019 WL 3573575, at *1 (D. Kan. Aug. 6, 2019).

When the court determines that service is insufficient, but it is curable, the court should quash the service and provide Plaintiff with an opportunity to re-serve. *Betts v. City of Greeley, Colo.*, 46 F.3d 1150, 1995 WL 18279, at *2 (10th Cir. Jan. 18, 1995); *Rader v. U.S.D. 259 Wichita Pub. Sch.*, No. CIV.A. 10-4118-KHV, 2011 WL 2144834, at *2 (D. Kan. May 31, 2011). Given that this issue is limited to Plaintiff personally mailing the summonses, it is feasible that Plaintiff could effectuate proper service. Defendants, however, also argue that this court lacks subject matter jurisdiction due to Plaintiff's lack of standing. For this reason, the court will address Defendants' arguments regarding standing to determine whether it will be futile to afford Plaintiff another opportunity to effect service. *See Hall v. State Farm Ins.*, 2018 WL 2102310, at *1 (D. Kan. May 7, 2018).

### B. Standing

Defendants argue that Plaintiff lacks standing because the purported executive order he is seeking to enjoin is nonexistent. In response, Plaintiff asserts that there is such an executive order and cites to two news articles in which he claims President Trump threatened to enter such an order.

This court's "judicial Power" extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  Therefore, to establish a justiciable case or controversy, Plaintiff must have standing to bring suit.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The Supreme Court has held that standing requires a plaintiff to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  Defendants argue that these elements cannot be met as the executive order Plaintiff claims caused an injury and that he seeks to enjoin does not exist.

In response to Defendants' motion, Plaintiff argues that the President "*announced* an executive order banning flavored vapes and requiring FDA approval." (Doc. 35 at 1)(emphasis in original).  In support, Plaintiff has attached "two articles confirming this."  (*Id.*)  The first article is titled "Trump Administration Announces Stripped-Down Regulations on Flavored Vaping Products."  (*Id.* at Exh. 1.)  The article states that some but not all flavored e-cigarettes will be removed from the market.  Although Plaintiff has not attempted to authenticate the exhibit, the article appears to come from www.time.com.  The second article is titled "Trump abandons sweeping vape ban with new slimmed-down rules."  (*Id.* at Exh. 2.)  It states that federal rules will be released but that they include "carveouts that will allow some products to remain on the market."  (*Id.*)  Again, Plaintiff has not authenticated the exhibit, but it appears to have been accessible on www.politico.com.  Neither article states that President Trump signed an executive order regarding vaping.

This court may take judicial notice of executive orders.  *See Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp.3d 61, 69, n. 6 (D.D.C. 2019) (citing *Dennis v. United States*, 339 U.S. 162, 169 (1950) (explaining that the Court could "[o]f course" take notice of an executive order relevant to the case).  Executive orders are published in the Federal

Register. *See* National Archives, Office of the Federal Register, Executive Orders ("After the President signs an Executive order, the White House sends it to the Office of the Federal Register (OFR). The OFR numbers each order consecutively as part of a series and publishes it in the daily Federal Register shortly after receipt."), at https://www.federalregister.gov/presidential-documents/executive-orders.[1] President Trump has issued 185 executive orders while in office. *Id.* (last visited Sept. 25, 2020). There is no executive order that was signed on December 31, 2019 (the date Plaintiff asserts the order was "announced" in his response brief) and the executive order signed on January 31, 2019 (the date Plaintiff alleges in his amended complaint) pertains to infrastructure projects. *See* Strengthening Buy-American Preferences for Infrastructure Projects, 84 Fed. Reg. 2039 (Jan. 31, 2019). Defendants contend that there is no such order and Plaintiff has failed to identify the purported executive order. Based on a search of the executive orders contained on the Federal Register's website, it does not appear that such an order has been entered.

It is Plaintiff's burden to demonstrate standing. *Utah Animal Rights Coal. v. Salt Lake Cty.*, 566 F.3d 1236, 1240 (10th Cir. 2009). Plaintiff has failed to do so. Plaintiff has alleged that an executive order caused him injury by denying access to vaping products. Plaintiff claims that the government unlawfully treats consumers of vaping products unfairly while marijuana consumers have immunity from federal law. (Doc. 18 at 2.) Plaintiff seeks injunctive relief in the form of prohibiting the enforcement of Trump's decree. *Id.* Plaintiff's claim has "no foundation in law" as the alleged executive order is nonexistent. *See Claybrook v. Slater*, 111 F.3d 904, 907 (D.C. Cir. 1997). A plaintiff cannot establish standing if the alleged injury has no "foundation upon which to premise standing." *State of Utah v. Babbitt*, 137 F.3d 1193, 1214 (10th Cir. 1998)

---

[1] The court can take judicial notice of information on government websites that is not "subject to reasonable factual dispute and is capable of determination using sources whose accuracy cannot reasonably be questioned." *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 702, n.22 (10th Cir. 2009); *see also Doe v. Heil*, 533 F. App'x 831, 833, n.2 (10th Cir. 2013)(taking judicial notice of a fact from a government website).

(citing *Claybrook*, 111 F.3d at 907 ("[I]f the plaintiffs' claim has no foundation in law, he has no legally protected interest and thus no standing to sue.")). Because there is no executive order, Plaintiff has not suffered an injury from the application of that order. Moreover, this court cannot offer any relief as there is no executive order to enjoin.

In their motion to dismiss, Defendants assert that Plaintiff might have misunderstood the law regarding tobacco products, which now includes vaping products. Under the Tobacco Control Act ("TCA"), Pub. L. No. 111–31 (2009), the Food and Drug Administration ("FDA") can regulate tobacco products "intended for human consumption." 21 U.S.C. §§ 321(rr)(1), 387a. Under the TCA, manufacturers are required to receive approval before tobacco products are delivered into interstate commerce. *Nicopure Labs, LLC v. Food & Drug Admin.*, 266 F. Supp.3d 360, 372 (D.D.C. 2017), *aff'd*, 944 F.3d 267 (D.C. Cir. 2019) (citing 21 U.S.C. § 387j(a)). The statute requires the submission of a premarket application which includes a statement of the components of the tobacco product, the methods used in manufacturing, the packaging of the product, and other information. 21 U.S.C. § 387j(b). The TCA also allows the FDA to deem a product to be a "tobacco product" by regulation. 21 U.S.C. § 387a(b). That is exactly what the FDA did with electronic cigarettes ("e-cigarettes"). "On May 10, 2016, the FDA exercised the authority Congress conferred upon it in 21 U.S.C. § 387a(b) to deem e-cigarettes…to be 'tobacco products' subject to the TCA. Deeming Rule, 81 Fed. Reg. at 28,976 ('Products that meet the statutory definition of 'tobacco products' include ... ENDS (including e-cigarettes, e-hookah, e-cigars, vape pens, advanced refillable personal vaporizers, and electronic pipes')." *Nicopure Labs, LLC*, 266 F. Supp.3d at 375.

The deeming rule resulted in a significant number of products being noncompliant with the TCA. *See In re Cigar Ass'n of Am.*, 812 F. App'x 128, 133 (4th Cir. 2020) (discussing the FDA's

8

decision to deem products such as cigars, pipe tobacco, and electronic nicotine delivery systems as subject to the TCA). The deeming rule, however, does not ban the manufacture or sale of e-cigarettes. *Nicopure Labs, LLC*, 266 F. Supp.3d at 367. As the *Nicopure Labs* court stated

> The Court wishes to reassure the many worried vapers who followed these proceedings closely that this case is not about banning the manufacture or sale of the devices. That is not what the Deeming Rule does or what it was intended to accomplish. In the Deeming Rule, the FDA simply announced that electronic cigarettes, or electronic nicotine delivery systems ("ENDS") would be subject to the same set of rules and regulations that Congress had already put in place for conventional cigarettes.
>
> The Rule requires manufacturers to subject their products to review before marketing them, to tell the truth when making any claims about their health benefits, and to warn consumers about the dangers of nicotine when offering a means to deliver the substance to consumers. In short, the manufacturers of e-cigarettes are now required to tell the 30 million people who use the devices what is actually in the liquid being vaporized and inhaled.
>
> This case does not pose the question—which is better left to the scientific community in any event—of whether e-cigarettes are more or less safe than traditional cigarettes. The Rule did not purport to take the choice to use e-cigarettes away from former smokers or other adult consumers; the issue is whether the FDA has the authority to require that the choice be an informed one.

*Id.*

As pointed out by Defendants, there has been extensive litigation over the deeming rule. The District of Columbia Court of Appeals affirmed the district court's decision that the FDA did not act arbitrarily in requiring e-cigarettes to be subject to the same rules as conventional cigarettes. *Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 281-82 (D.C. Cir. 2019). Notably, on appeal, the appellants did not challenge the FDA's decision to deem e-cigarettes to be "tobacco products." *Id.* at 281. The court of appeals held that the "premarket authorization pathway is a creature of Congress not subject to challenge under the APA and, in any event, simply is not the blunt, arbitrary instrument that the Industry portrays." *Id.* at 282.

The FDA had previously announced a new compliance policy in which it did not intend to enforce the premarket review provision for electronic cigarettes until 2022, but that policy was invalidated after a challenge to the policy by public health groups and doctors. *Am. Acad. of Pediatrics (AAP) v. FDA*, 379 F. Supp.3d 461, 468, 497-98 (D. Md. 2019). The deadline to submit an application for premarket review was extended to September 9, 2020, due to the COVID-19 pandemic. *See AAP v. FDA*, No. 18-883, Doc. 182 (D. Md. Apr. 22, 2020). Products that have a timely application filed with the FDA "may remain on the market without being subject to FDA enforcement actions for a period not to exceed one year from the date of application while FDA considers the application." *Am. Acad. of Pediatrics v. FDA*, 399 F. Supp.3d 479, 487 (D. Md. 2019), *appeal dismissed sub nom. In re Cigar Ass'n of Am.*, 812 F. App'x 128 (4th Cir. 2020). With respect to products that are on the market and applications were not timely filed, the FDA can proceed with enforcement actions, subject to the FDA's discretion. *Id.*

Therefore, under the current law, all vaping products are not being banned and removed from stores. The new products, however, must comply with the TCA. In response to Defendants' presentation of the status of the law, Plaintiff appears to waive any challenge[2] to the deeming rule by stating that this is "not the issue." (Doc. 35 at 2.) Plaintiff then argues that Defendants admit that they have a "compliance policy with impossibly high standards." *Id.* Presumably, Plaintiff is referring to the TCA's requirements. Plaintiff argues that the government intends to enforce these standards and this is a "de-facto ban." *Id.*

Although the deeming rule and the TCA require e-cigarettes to be subject to the premarket review process, Plaintiff has not pointed to any law that bans e-cigarettes entirely. Moreover, although presented with the existing laws regarding e-cigarettes, the TCA and the deeming rule,

---

[2] Plaintiff likely does not have standing to challenge the deeming rule. *Faircloth v. Food & Drug Admin.*, No. 2:16-CV-5267, 2017 WL 4319495, at *4 (S.D.W. Va. Sept. 28, 2017).

10

Plaintiff makes no argument that he is challenging those laws. Under those laws, Plaintiff has not suffered an actual injury, such as denial of the product, as there is no outright ban on e-cigarettes and, in fact, products that have submitted applications by September 2020 may remain on the market for one year while their applications are pending. *Am. Acad. of Pediatrics*, 399 F. Supp. 3d at 487. Moreover, to the extent Plaintiff is somehow challenging the FDA's enforcement guidance regarding how the FDA was prioritizing the enforcement of the TCA, this guidance does not ban e-cigarettes or other vaping products. *See* FDA, FDA finalizes enforcement policy on unauthorized flavored cartridge-based e-cigarettes that appeal to children, including fruit and mint (Jan. 2, 2020), https://www.fda.gov/news-events/press-announcements/fda-finalizes-enforcement-policy-unauthorized-flavored-cartridge-based-e-cigarettes-appeal-children ("Importantly, the FDA's enforcement priorities are not a 'ban' on flavored or cartridge-based ENDS. The FDA has already accepted and begun review of several premarket applications for flavored ENDS products through the pathway that Congress established in the Tobacco Control Act.")

Plaintiff has the burden to establish standing and he has not done so. Plaintiff alleges that he has been harmed by an executive order that cannot be located on the Federal Register and he has not established that such an order exists. Instead, Plaintiff cites to articles from two websites but even those articles do not support Plaintiff's claim that there is an executive order. Moreover, Plaintiff's conclusory allegation that he is being "denied access" is not sufficient to allege that he suffered harm. Plaintiff has not alleged any facts to support his conclusion that he is denied access to "vaping product[s]" (Doc. 18 at 2.) As cited by case authority and FDA statements on its website, vaping products have not been outright banned. Those products must comply with the

TCA and were given until just recently to do so. Plaintiff's allegation that he is subject to arrest is also without a basis in the law.[3]

Plaintiff's brief in response to Defendants' motion to dismiss does not provide any additional basis to find that Plaintiff has established standing. Rather, he argues that Defendants allow states to give drug offenders a free pass due to the failure to enforce marijuana laws by the states and that the federal government should also stay out of the enforcement of tobacco products. Plaintiff has previously unsuccessfully brought suit against the state of Kansas regarding marijuana laws. *See Goico v. Kansas*, 773 F. App'x 1038, 1039 (10th Cir. 2019) (alleging the State's attempts to legalize marijuana are unconstitutional); *Goico v. Kansas*, No. 19-1284, 2020 WL 68375, at *1 (D. Kan. Jan. 7, 2020); *Goico v. Kansas*, No. 20-1026, 2020 WL 3034814, at *1 (D. Kan. June 5, 2020) (dismissing Plaintiff's complaint that sought to "put a stop to any state efforts to reduce or relax restrictions on marijuana…").

Although Plaintiff's challenge in this case is different, the result is the same. Plaintiff's amended complaint is subject to dismissal. Plaintiff has not met his burden to show that he has standing. The court finds that Plaintiff's amended complaint fails to plausibly allege that he has suffered an injury. Plaintiff has also failed to establish that Defendants' actions resulted in any injury as Plaintiff has not shown that the executive order he complains of is in existence. As a result, this court cannot offer any relief to Plaintiff.

**IV.    Conclusion**

This court lacks jurisdiction over Defendants due to Plaintiff's failure to properly serve Defendants. Although the defects in service are curable, the court further finds that Plaintiff lacks

---

[3] As pointed out by Defendants, the Food, Drug, and Cosmetic Act does not penalize consumers, either criminally or civilly, for possessing tobacco products. *See* 21 U.S.C. § 331.

standing.  Therefore, Defendants' motion to dismiss is GRANTED.  (Doc. 31.)  Plaintiff's motion for preliminary injunction (Doc. 4) is DENIED.

IT IS SO ORDERED this 28th day of September, 2020.

               _____s/ John W. Broomes_____
               JOHN W. BROOMES
               UNITED STATES DISTRICT JUDGE